UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT PALACIO VELLANOWETH, | No. 2:12-cv-0460 CKD P |
| Petitioner, | |
| v. | ORDER |
| WILLIAM KNIPP, | |
| Respondent. | |

Petitioner, a California prisoner proceeding with counsel, is proceeding with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to have all matters in this action before a United States Magistrate Judge. See 28 U.S.C. § 636(c).

On July 10, 2008, petitioner was convicted in the Superior Court of Sacramento County of four counts of gross vehicular manslaughter while under the influence of alcohol, one count of causing bodily injury while driving under the influence, and one count of causing bodily injury while driving with .08 percent alcohol in his blood. A summary of the facts presented at trial may be found in the opinion of the California Court of Appeal concerning petitioner's direct appeal, attached to petitioner's original petition for writ of habeas corpus (ECF No. 1) at page 16.[1] Petitioner is now serving a sentence of 17 years and 8 months imprisonment. Respondent has

---

[1] The page numbers referenced are the ones assigned by the court's electronic docketing system.

1

1  filed a motion to dismiss, arguing that the claims raised in the operative amended petition filed on
2  June 28, 2013 (ECF No. 7) which were not raised in the original petition filed on February 22,
3  2012 (ECF No. 1) are time-barred.  Respondent concedes that the claims raised in the original
4  petition are timely.

I. <u>Limitations Generally</u>

Title 28 U.S.C. § 2244(d)(1) provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

On January 31, 2011, petitioner filed a petition for review in the California Supreme Court of the California Court of Appeal's denial of petitioner's appeal of his convictions.  The petition for review was denied on March 16, 2011.  Resp't's Ex. C.  Petitioner's conviction became final for purposes of § 2244(d)(1)(A) on June 14, 2011 when time expired for petitioner to seek a writ of certiorari with respect to the California Supreme Court's denial of petitioner's direct appeal request for review.  See <u>Bowen v. Roe</u>, 188 F.3d 1157, 1158 59 (9th Cir. 1999) ("We hold that the period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition.").  Thus, the limitations period applicable to this action began running on June 15, 2011.

/////

On March 12, 2012, petitioner filed a petition for writ of habeas corpus in the Superior Court of Sacramento County. Resp't's Ex. D at 1. Title 28 U.S.C. § 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). In the order denying the petition, however, the Superior Court found that the claims raised were untimely. Resp't's Ex. D at 4. That being the case, the petition was not "properly filed" for purposes of § 2244(d)(2) and does not provide a basis for tolling. Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005). Accordingly, the limitations period applicable to the claims presented for the first time in petitioner's amended petition for writ of habeas corpus continued to run while his petition for collateral relief was pending in the Superior Court of Sacramento County. Therefore, the limitations period expired on June 14, 2012, well before the amended petition was filed on June 28, 2013.[2]

II. Relation Back

As indicated above, respondent concedes that petitioner's original habeas petition is timely. Therefore, if the new claims raised in the amended petition "relate back" to the original, the claims are timely. Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure provides that a claim asserted for the first time in an amended pleading will relate back to the date of filing of the original pleading for statute of limitations purposes if the new claim "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." In the habeas corpus context, the

---

[2] Petitioner argues that the limitations period was tolled when the court stayed his original petition on March 14, 2012 until the amended petition was filed. Generally speaking, the applicable limitations period is not tolled by a pending federal petition. Duncan v. Walker, 533 U.S. 167, 172 (2001). Furthermore, in footnote 1 of the order granting the stay (ECF No. 4), the court reminded petitioner about the applicable limitations period and specifically informed petitioner that by granting the stay the court was not making any representation as to whether any of petitioner's claims, including those raised in the original petition, were timely. The court does note that petitioner's Claim I in his amended petition, entitled "actual innocence," may require a different limitations analysis because petitioner asserts that he discovered evidence demonstrating his "actual innocence" after the conclusion of his direct appeal. The court declines to address whether 28 U.S.C. § 2244(d)(1)(D) might apply to this claim, however, as the court rejects petitioner's "actual innocence" claim on the merits, as discussed below.

"relation back" rule applies only when the new claims "arise from the same core facts as the timely filed claims, and not when the new claims depend on events separate in both time and type from the originally raised episodes." Mayle v. Felix, 545 U.S. 644, 657 (2005).

### A. Claims Raised In Original Petition

In his original petition, petitioner asserted:  1) his right to due process was violated when the trial court excluded evidence that the person driving the car with which petitioner's car collided did not have a driver's license; and 2) petitioner's right to due process was violated when the trial court instructed jurors that they could conclude petitioner possessed a blood alcohol level in excess of .08 and was under the influence of alcohol at the time of the crash based solely on the fact that a blood test taken following the accident showed that petitioner did have a blood alcohol level of .08.

### B. Claims Raised in the Amended Petition

#### 1. Claim I

In Claim I, petitioner alleges his "actual innocence." As indicated above, the court declines to address whether petitioner's "actual innocence" claim is time-barred because the court rejects the claim on the merits below.

#### 2. Claim II

Petitioner again asserts the claims he raised in his original petition under the heading Claim II his amended petition, and, with respect to the claim regarding exclusion of evidence, he asserts that the exclusion of the evidence described violated his Sixth Amendment right to present a defense.  The court finds that this Sixth Amendment claim relates back to the claims raised in the original petition.  Therefore, respondent will be directed to file an answer with respect to all of the claims asserted under the heading Claim II in the amended petition.

#### 3. Claim III

As to Claim III, however, the court cannot conclude that it relates back.  In this claim, petitioner asserts he was subjected to ineffective assistance of counsel in the following respects: 1) Counsel failed to call witnesses to support petitioner's testimony that he was not under the influence of alcohol at the time of the crash; and 2) Counsel failed to call witnesses who support

4

petitioner's testimony that the person driving the car containing the victims was at fault for the crash.

As noted above, the claims from petitioner's original petition do not concern the performance of trial counsel and whether counsel was constitutionally ineffective for failing to call more witnesses to support petitioner's theories of defense. The core facts related to petitioner's ineffective assistance claims are not the same as petitioner's exclusion of evidence claim or his jury instruction claim. Therefore, Claim III does not relate back.

                4.  Claims IV and V

Claims IV and V concern petitioner's sentence, and have no relation to petitioner's original claims. Thus, neither claim relates back.

III.  Actual Innocence

As indicated above, Claim I of petitioner's amended petition is titled "Actual Innocence," and is a claim which was not presented in the original petition. In Claim I, petitioner asserts that evidence he discovered around December 2011 establishes his innocence and entitles him to habeas relief.

In McQuiggin v. Perkins, 133 S. Ct. 1924, 1931-34 (2013), the Supreme Court held for the first time that a federal habeas petitioner may have otherwise time-barred claims heard if a credible showing of "actual innocence" is made. McQuiggin, 133 S. Ct. at 1931. A credible showing of "actual innocence" occurs when a prisoner shows that it is "more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 1935. The court specifically noted, however, that it had not yet decided whether the "actual innocence" showing described above could, by itself, provide a basis for habeas corpus relief. Id. at 1931. Whether it can or cannot is immaterial here, however, because petitioner has not made a credible showing of actual innocence.

Petitioner summarizes his newly discovered evidence / "actual innocence" claim as follows:[3]

---

[3] Again, for a summary of the evidence which was presented at petitioner's trial, refer to page 16 of petitioner's original petition for writ of habeas corpus filed February 22, 2012.

Able and Elidia Campos

A material and primary defense presented and testified to by Mr. Vellanoweth was that he was involuntarily intoxicated. Mr. Vellanoweth testified that while at the Camino Real Restaurant, approximately 15-20 minutes immediately before the collision, he was offered a drink and he requested a "horchata." Instead of a "horchata," Mr. Garnica's wife gave Mr. Vellanoweth a "virgin kamikaze," which Mr. Vellanoweth believed did not contain alcohol. However, the drink in fact was not a "virgin" drink, as it contained a high volume of alcohol. Mr. Vellanoweth consumed the drink given to him, but given that the drink tasted like orange juice and was very sweet, he did not taste the alcohol in it. After Mr Vellanoweth finished the drink, he left the restaurant.

However, at the trial in this matter, Angelina Garnica testified as follows:

> Q: Do you recall a day in March of 2007 that you learned that Mr. Vellanoweth had been in a serious automobile accident?
>
> A: Uh-huh, yes.
>
> Q: How had you seen Mr. Vellanoweth in the restaurant that day?
>
> A: He came in the afternoon looking for my dad.
>
> Q: But sometime in the afternoon, he came in looking for your father you said?
>
> A: Yes.
>
> Q: Was your father in the restaurant at the time?
>
> A: No.
>
> Q: Did Mr. Vellanoweth stay very long?
>
> A: No.
>
> Q. While he was there, did he have anything to drink?
>
> A: No.

As established by the testimony of Mr. Vellanoweth, Ms. Garnica's testimony was simply not true.

Ms. Garnica admitted to at least two people that Mr. Vellanoweth indeed was given an alcoholic drink while he was at the Camino Real Restaurant. Specifically, Ms. Garnica made these admissions

to Abel Campos and Elidia Campos.[4]

Three days after the collision, Mr. Campos was at the Camino Real Restaurant and had a discussion with Ms. Garnica about Mr. Vellanoweth. During this discussion Ms. Garnica confirmed that Mr. Vellanoweth was at the Camino Real Restaurant on the day of the collision. Ms. Garnica further advised that when he was there, Mr. Vellanoweth was demanding and irritating. While Mr. Vellanoweth was there, both Ms. Garnica and her mother were serving him. Mr. Campos was told by Ms. Garnica that Mr. Vellanoweth was served a cocktail.

Mr. Campos and Ms. Garnica spoke a few more times; between four and seven times regarding Mr. Vellanoweth being served a drink that day. However, it was not discussed often because the subject was considered "taboo."

Three days before Ms. Garnica was to testify in the Vellanoweth trial, she had a discussion with Mr. Campos about her testimony. On this day, Mr. Campos and his family arrived at the Restaurant to have dinner. As they were being seated, Mr. Campos jokingly asked for a "Vellanoweth" special. Ms. Garnica responded angrily telling Mr. Campos to "shut up…somebody is going to hear that I fucking served him the drink." As the evening progressed, Ms. Garnica eventually sat down with Mr. Campos and his wife, Elidia at their table. While Ms. Garnica was seated, Elidia, asked Ms. Garnica whether she served Mr. Vellanoweth an alcoholic drink. Ms. Garnica responded that she did, but she was not going to tell the court. Ms. Campos asked Ms. Garnica why she planned on lying, to which Ms. Garnica responded it was for . . . the sake of her father and the restaurant.

This newly discovered [evidence] establishes and supports Mr. Vellanoweth's defense of involuntary intoxication. Involuntary intoxication is an absolute defense to the alleged charges. It establishes actual innocence. Consequently, the time limitations of AEDPA do not bar this petition. . .

Frank Soto

Here, Mr. Soto can establish that Mr. Vellanoweth did not cause the death of Ms. Rice, the three passengers in her vehicle or the injuries to Ms. Williamson.

Mr. Soto's proffered testimony establishes that the accident occurred just as Mr. Vellanoweth says it did; that Ms. Rice was traveling northbound in the southbound lane, Mr. Vellanoweth was traveling southbound in the southbound lane, and that just prior to the accident Mr. Vellanoweth attempted to avoid the accident by swerving into the northbound lane at the same time Ms. Rice swerved back into the northbound lane. Mr. Soto's testimony will

---

[4] Mr. Vellanoweth became aware of Mr. and Mrs. Campos as the result of a chance encounter between the Campos' and an individual familiar with this case.

7

>corroborate the testimony of the other witnesses who observed Ms. Rice driving right before the accident.

The evidence supporting petitioner's summary is provided by respondent in the form of deposition testimony from Able and Elidia Campos, which was apparently taken pursuant to a civil action filed against petitioner, and an affidavit from Mr. Soto.[5]

As for Mr. and Mrs. Campos, whether Ms. Garnica actually served petitioner a single alcoholic drink is not material to petitioner's guilt or innocence. Even if the drink contained alcohol, it would be more damaging to petitioner since it would be more likely that petitioner ordered the drink, or at least knew that it contained alcohol, than petitioner not knowing it contained alcohol. Considering it is not disputed that petitioner had three martinis at lunch on the day of the crash, it would be entirely reasonable for jurors to conclude that petitioner was a fairly regular drinker who could tell when a drink had alcohol in it when the alcohol content was anything more than minimal.

With respect to the affidavit provided by Mr. Soto, petitioner asserts in his amended petition that he met Mr. Soto, a fellow inmate, in July 2013 at Mule Creek State Prison. Am. Pet. at 44. Petitioner alleges Mr. Soto approached petitioner and indicated that he had witnessed the accident, and that Mr. Soto ascribed blame for the accident to the driver of the other car. However, the court finds that there is nothing in the affidavit provided by Mr. Soto which causes the court to question the jury's verdict in this case. All of the information provided by Mr. Soto could have been suggested by petitioner or generated with some knowledge of the facts presented at trial.[6] Further, Mr. Soto fails to offer any explanation as to why he did not come forward with his information until 2013, when he and petitioner were incarcerated together. Most importantly, however, there is nothing provided by petitioner, or anywhere else in the record, which

////

////

---

[5] ECF No. 29-1, Exhibit N.

[6] Indeed, the affidavit itself is suspect in that it alternates between the first person ("I noted the Jeep was not weaving …") and the third person ("Mr. Soto saw the Jeep swerve…"). Id. at ¶ 8.

8

corroborates Mr. Soto's assertion that he was present when the accident occurred.[7]

For these reasons, petitioner has not shown that his new evidence demonstrates "actual innocence" under McQuiggin.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Respondent's November 19, 2013 motion to dismiss (ECF No. 15) is granted.

2. Claims I, III, IV and V in petitioner's amended petition for writ of habeas corpus are dismissed.

3. Respondent shall file his answer to Claim II within 60 days of this order. An answer shall be accompanied by transcripts and other documents not already on file which are relevant to the issues presented in the remaining claim.

4. Petitioner's traverse, if any, shall be filed and served within thirty days after service of the answer.

Dated: July 31, 2014

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
vell0460.157

---

[7] The absence of corroboration is particularly startling given that Mr. Soto asserts that after the accident he "went back to my vehicle where I watched and waited for emergency response units to arrive." Id. at ¶ 11.